## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Greensboro College, Inc.,        )
                                    )
        Plaintiff,               )      Case No.
v.                                  )
                                    )
United States of America,       )
                                    )
        Defendant.          )

## COMPLAINT

### JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to the Tucker Act (28 U.S.C. 1491(a)) because this action presents a claim against the United States which is founded upon the Constitution of the United States.

2.      Plaintiff's claim is based upon (1) The Fifth Amendment to the United States Constitution, which provides, "No person shall … be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." *U.S. Const. Amend. V.* (2) Section 8(d) of the Trails Act, codified as 16 U.S.C. 1247(d), which provides, "interim use [of abandoned railroad right-of-way easements for public recreation] shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes."  (3) The Tucker Act, which provides "The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded upon the Constitution."  28 U.S.C. 1491(a).  And (4) The Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. 4654(c) (URA) (Pub. L. 91-646; 84 Stat. 1894), requires the federal government to reimburse these owners the "reasonable costs,

disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of [the] proceeding."

## STATEMENT OF FACTS

3.      Norfolk Southern Railway Company formerly owned an easement for railroad purposes between Milepost CF-65.6 and Milepost CF-68.7 in the City of Greensboro, Guilford County, North Carolina (the "Railroad Corridor").

4.      Under the terms of the easements that created this right-of-way and North Carolina law, Norfolk Southern Railway Company (or its successors in interest) did not have the ability to convert this abandoned Railroad Corridor into a public park.

5.      On October 11, 2019, the federal Surface Transportation Board (STB) issued an order (called a Notice of Interim Trail Use or Abandonment (NITU)) invoking section 8(d) of the Trails Act.  STB Docket No. AB 290 (Sub No. 404X).

6.      Apart from the STB's invocation of section 8(d) of the federal Trails Act, neither Norfolk Southern Railway Company, the City of Greensboro, nor any future owner of the Railroad Corridor has the legal right or ability to convert the Railroad Corridor into a public linear park.

7.      In *Preseault v. United States*, 100 F.3d 1525 (Fed. Cir. 1996) (*Preseault II*), the Federal Circuit, sitting *en banc*, held the federal government is constitutionally obligated to pay landowners when the STB invokes section 8(d) of the Trails Act.  "[W]e conclude that the taking that resulted from the establishment of the recreational trail is properly laid at the doorstep of the Federal Government."  100 F.3d at 1532.

8.      The Federal Circuit held, the federal government's liability in a Trails Act taking is established under a three-point analysis.  *See Ellamae Phillips Co. v. United States*, 564 F.3d 1367, 1373 (Fed. Cir. 2009).  *Citing Preseault II*, 100 F.3d at 1533.

(1) [W]ho owns the strip of land involved, specifically, whether the railroad acquired only an easement or obtained a fee simple estate;

(2) [I]f the railroad acquired only an easement, were the terms of the easement limited to use for railroad purposes, or did they include future use as a public recreational trail (scope of the easement); and

(3) [E]ven if the grant of the railroad's easement was broad enough to encompass a recreational trail, had this easement terminated prior to the alleged taking so that the property owner at the time held a fee simple unencumbered by the easement (abandonment of the easement).[1]

## THE PARTIES

**A.      Plaintiff**

***Greensboro College, Inc.***

9.      Greensboro College, Inc. (Greensboro College) owned land adjacent to the former railroad right-of-way on October 11, 2019.  The land is located in Guilford County and identified by the County as parcel numbers 3789, 3790, and 3914.  The Greensboro College property includes but is not limited to the fee title to all of the land extending to the centerline of the former railroad right-of-way that is now subject to an easement for public recreation and railbanking.

**B.      The Defendant.**

10.      The United States of America is the defendant.  The federal government took this North Carolina owner's land for a public recreational trail and railbanking by an order of the federal Surface Transportation Board invoking section 8(d) of the federal Trails Act.

11.      The Federal Circuit, sitting *en banc*, explained: "that Trails Act takings were the responsibility of the federal government. [W]e conclude that the taking that resulted from the establishment of the recreational trail is properly laid at the doorstep of the Federal Government.

---

[1] The third point in this analysis arises only when the right-of-way easement originally granted the railroad included a right for a non-railroad to use the land for a public recreational trail.

… The Federal Government authorized and controlled the behavior of the State in this matter, and the consequences properly fall there." *Preseault II*, 100 F.3d at 1531.

## CAUSES OF ACTION

### COUNT I

*An action for "Just Compensation" under the Fifth Amendment*
*to the United States Constitution.*

The federal government took this North Carolina owner's property and the Just Compensation Clause of the Fifth Amendment to our Constitution requires the federal government to pay this owner for what the government took.

12.     Congress amended the Trails Act in 1983 for the explicit purpose of authorizing the ICC (now the STB) to take an owner's state-law right to unencumbered title and possession of the owner's land.  Congress intended section 8(d), when invoked, to impose new and different easements upon the owner's land and to perpetuate the STB's jurisdiction over the owner's land.[2]

13.     In *Preseault I*, the Supreme Court found the Trails Act to be constitutional because it was an exercise of Congress's eminent domain authority.  By exercising its eminent domain power Congress could enact section 8(d) of the Trails Act and allow the ICC (now the STB) to redefine existing state-law property interests and take private property for public recreation and railbanking.

---

[2]*See Preseault I* and *Trevarton v. South Dakota*, 817 F.3d 1081, 1087 (8th Cir. 2016) (holding the invocation of section 8(d) imposes a new and different easement upon the owner's land).  *And see Citizens Against Rails-to-Trails v. Surface Transp. Bd.*, 267 F.3d 1144, 1149 (DC Cir. 2001) and *Nat'l Wildlife Found. v. Interstate Commerce Comm'n*, 850 F.2d 694, 697-98 (DC Cir. 1988) (explaining that Congress intended to extinguish owners' state-law property rights).

14.     But, the Supreme Court continued, the Fifth Amendment requires the United States to justly compensate owners for the value of that property taken when the government invokes section 8(d).  Justice Brennan wrote for a unanimous Court:

> This language [section 8(d)] gives rise to a takings question in the typical rails-to-trails case because many railroads do not own their rights-of-way outright but rather hold them under easements or similar property interests.  While the terms of these easements and applicable state law vary, frequently the easements provide that the property reverts to the abutting landowner upon abandonment of rail operations. State law generally governs the disposition of reversionary interests … By deeming interim trail use to be like discontinuance rather than abandonment, Congress prevented property interests from reverting under state law.

*Preseault I*, 494 U.S. at 8.[3]

15.     Justice O'Connor (joined by Kennedy and Scalia) concurred to emphasize "[A] sovereign, 'by *ipse dixit*, may not transform private property into public property without compensation . . . This is the very kind of thing that the Taking Clause of the Fifth Amendment was meant to prevent.'"  *Id.* at 23 (quoting *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1012 (1984) which in turn quoted *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 164 (1980)).[4]

16.     The Federal Circuit sitting *en banc* in *Preseault II*, 100 F.3d at 1531, followed *Preseault I,* and held:

> [W]e conclude that the taking that resulted from the establishment of the recreational trail is properly laid at the doorstep of the Federal Government … In the case before us there was a similar physical entry upon the private lands of the [property owners], acting under the Federal Government's authority pursuant to the ICC's [now STB's] Order.  That it was for a valued public use is not the issue.  We have here a straightforward taking of private property for a public use for which just compensation must be paid.

---

[3]  Citations omitted.

[4]  In *Stop the Beach Renourishment, Inc. v. Florida*, 560 U.S. 702, 713 (2010), the Court reaffirmed its holding that the government "effect[s] a taking if they recharacterize as public property what was previously private property."

17.     In *Ellamae Phillips*, 564 F.3d at 1373, a panel of the Federal Circuit summarized the Federal Circuit's *en banc* holding in *Preseault II* and noted the federal government's liability turns upon three questions:

(1) [W]ho owns the strip of land involved, specifically, whether the railroad acquired only an easement or obtained a fee simple estate;

(2) [I]f the railroad acquired only an easement, were the terms of the easement limited to use for railroad purposes, or did they include future use as a public recreational trail (scope of the easement); and

(3) [E]ven if the grant of the railroad's easement was broad enough to encompass a recreational trail, had this easement terminated prior to the alleged taking so that the property owner at the time held a fee simple unencumbered by the easement (abandonment of the easement).[5]

18.     Under North Carolina law, Greensboro College:  1) owned the land and the railroad held only an easement, 2) the railroad held only a right to operate a railway across the strip of land and the railroad did not have any right to sell or transfer the land to a non-railroad for public recreation or railbanking; and 3) whatever interest the railroad held in the right-of-way easement unequivocally terminated when the railroad no longer operated a railway across the strip land.

19.     An easement for the operation of a railroad is entirely different than an easement for public recreation.  The Federal Circuit explained this fundamental point when it held:

It is elementary law that if the Government uses (or authorizes the use of—a point to be considered later) an existing railroad easement for purposes and in a manner not allowed by the terms of the grant of the easement, the Government has taken the landowner's property for the new use. The consent of the railroad to the new use does not change the equation—the railroad cannot give what it does not have.

And it appears beyond cavil that use of these easements for a recreational trail—for walking, hiking, biking, picnicking, frisbee playing, with newly-added tarmac pavement, park benches, occasional billboards, and fences to enclose the trailway—is not the same use made by a railroad, involving tracks, depots, and the running of trains. The different uses create different burdens. In the one case there was an occasional train passing through (no depots or turntables or other appurtenances are involved on these rights of way). In the other, individuals or

---

[5] See note 14, *supra*.

groups use the property, some passing along the trail, others pausing to engage in
activities for short or long periods of time. In the one case, the landowner could
make such uses of the property as were not inconsistent with the railroad's use,
crossing over the tracks, putting a fruit stand on one edge of the property, or
whatever.  In the other, the government fenced the trail in such a way as to deny
that access.

Some might think it better to have people strolling on one's property than to have a
freight train rumbling through.  But that is not the point. The landowner's grant
authorized one set of uses, not the other.  Under the law, it is the landowner's
intention as expressed in the grant that defines the burden to which the land will be
subject.  The Government does not dispute this proposition—the Government
agrees that, consistent with the state's law, the landowner's grant defines the burden
with which the land is burdened.

*Toews*, 376 F.3d at 1376-77.

20.      But for the STB invoking section 8(d) of the Trails Act, Greensboro College would
have held and enjoyed unencumbered title and Greensboro College would have had exclusive right
to possess its property free of any easement for recreational trail use or railbanking.

21.      The federal government's liability was established when the STB issued its order
invoking section 8(d) of the Trails Act on October 11, 2019.  In *Caldwell v. United States*, 391
F.3d 1226 (Fed. Cir. 2004), *Barclay v. United States*, 443 F.3d 1368 (2006), and *Illig v. United
States*, 274 Fed. Appx. 883 (2008), *cert. denied* 557 U.S. 935 (2009).  See also Solicitor General
Kagan's Brief for the United States in Opposition to Petition for Writ of Certiorari, *Illig v. United
States*, 2009 WL 1526939.   In *Barclay* the Federal Circuit held that an owner's right to
compensation in a Trails Act taking arises when the STB first issues its order invoking section
8(d).  Specifically, Judge Dyk of the Federal Circuit wrote:

The taking, if any, when a railroad right-of-way is converted to interim trail use
under the Trails Act occurs when state law reversionary property interests that
would otherwise vest in the adjacent landowners are blocked from so vesting.
Abandonment is suspended and the reversionary interest is blocked "when the
railroad and trail operator communicate to the STB their intention to negotiate a
trail use agreement and the agency issues an NITU that operates to preclude
abandonment under section 8(d)" of the Trails Act.  We concluded that "[t]he
issuance of the NITU is the only government action in the railbanking process that

operates to prevent abandonment of the corridor and to preclude the vesting of state law reversionary interests in the right of way.  Thus, a Trails Act taking begins and a takings claim accrues, if at all, on issuance of the NITU.

*Barclay*, 443 F.3d at 1373.[6]

22.     Greensboro College's right to be justly compensated for that property the federal government took does not depend upon whether (or when) the railroad and a trail-user reach some agreement, transfer the right-of-way or when the trail-user builds a public recreational trail across this owner's land.  The government's liability for a Fifth Amendment taking is defined by what the owner lost, not what the taker gained.  *See* Justice Holmes's decision for a unanimous Supreme Court in *Boston Chamber of Commerce v. City of Boston,* 217 U.S. 189, 195, (1910) ("And the question is, What has the owner lost?  Not, What has the taker gained?")  *See also First English Evangelical Lutheran Church v. Los Angeles*, 482 U.S. 304, 321-22 (1987) ("a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change") (quoting *Pennsylvania Coal*, 260 U.S. at 416).

23.     Greensboro College lost its right to unencumbered title and exclusive possession of its land when the STB invoked section 8(d) in October 2019.

24.     The Federal Circuit  and the Supreme Court hold the STB's invocation of section 8(d) takes an owner's state-law right to unencumbered title and exclusive possession of the owner's land and this dispossession of the owner's state-law right to use their land defines the nature of the government's taking – and the measure of compensation the owner is due.  In *Ladd v. United States*, 630 F.3d 1015, 1024 – 25 (Fed. Cir. 2010) (*Ladd I*) (rehearing denied in *Ladd v. U.S.*, 646 F.3d 910 (Fed. Cir. May 26, 2011)), the Federal Circuit held:

---

[6] *See also Ladd v. United States*, 630 F.3d 1015, 1020 (Fed. Cir. 2010) (*Ladd I*) (rehearing denied, 646 F.3d 910 (Fed. Cir. 2011)); *Ladd v. United States*, 713 F.3d 648, 652 (Fed. Cir. 2013) (*Ladd II).*

Hence it is irrelevant that no trail use agreement has been reached and that no recreational trail has been established. *** "a taking occurs when the owner is deprived of use of the property...by blocking the easement reversion. While the taking may be abandoned ... by the termination of the NITU[,] the accrual date of a single taking remains fixed." *Caldwell*, 391 F.3d at 1235. We further explained: "The NITU marks the 'finite start' to either temporary or permanent takings claims by halting abandonment and the vesting of state law reversionary interests when issued." *Id.* Thus, the NITU forestalls or forecloses the landowners' right to unencumbered possession of the property. *Cf. Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 831, (1987) ("To say that the appropriation of a public easement across a landowner's premises does not constitute the taking of a property interest but rather ... 'a mere restriction on its use,' is to use words in a manner that deprives them of all their ordinary meaning.").[7]

25.     That this land was taken from Greensboro College for a public amenity such as a public recreational trail does not mitigate the government's constitutional obligation to justly compensate this owner.  Justice Holmes cautioned, "[w]e are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving that desire by a shorter cut than the constitutional way of paying for the change." *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922).  Similarly, Justice Black wrote, "The Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States,* 364 U.S. 40, 49 (1960); see also *Monongahela Nav. Co. v. United States*, 148 U.S. 312, 324 (1983),

---

[7]Internal citations omitted.  *See also Navajo Nation v. United States*, 631 F.3d 1268, 1275 (Fed. Cir. 2011), in which the Federal Circuit affirmed its holding in *Ladd I* as "explaining that a takings claim accrues when the government takes action which deprives landowners of 'possession of their property unencumbered by [an] easement,' regardless of whether third parties ever take physical possession of that easement" and its holding in *Caldwell* as "concluding that any taking occurred when the government took action preventing landowners' state law reversionary interests in a railroad right-of-way from vesting, not when subsequent actions by third parties caused the right-of-way to be converted to an interim trail for recreational use."

"the right to compensation is an incident to the exercise of that power [of eminent domain]; that the one is so inseparably connected with the other that they may be said to exist, not as separate and distinct principles, but as parts of one and the same principle."[8]

26.     The Fifth Amendment requirement of justly compensating an owner from whom the government takes property includes:  (a) the full fair market value of the property taken as of the date it was appropriated by the federal government – fair market value includes not only the value of the land physically confiscated but also any "severance damages" or loss in value to the property owner's entire parcel caused by the government's taking; and, (b) payment of an additional amount necessary to compensate the property owner for the government's delay in paying the property owner "just compensation."

27.     The Supreme Court held, "The compensation to which the owner is entitled is the full and perfect equivalent of the property taken.  It rests on equitable principles and it means substantially that the owner shall be put in as good position pecuniarily as he would have been if his property had not been taken.  He is entitled to the damages inflicted by the taking." *Seaboard Air Line Ry. Co. v. United States*, 261 U.S. 299 (1923).[9]

28.     The federal government's obligation to pay interest begins when the STB first invokes §1247(d).  Here that date is October 11, 2019.  The federal government must pay interest calculated at the Moody's Aaa rate from October 11, 2019 until the United States Treasury actually pays each owner.  *See Miller v. United States*, 620 F.2d 712 (Ct. Cl. 1980); *Pitcairn v. United States*, 547 F.2d 1106 (Ct. Cl. 1976); *Tektronix, Inc. v. United States*, 575 F.2d 832 (Ct. Cl. 1978); *cert. denied*, 439 U.S. 1048; and *Georgia Pacific v. United States*, 640 F.2d 328 (Ct. Cl. 1980);

---

[8]  *Citing Pumpelly v. Green Bay Co.*, 80 U.S. 166 (1871), and other authority.

[9]  *Citing Monongahela*, 148 U.S. at 327.

*Miller v. United States*, Court of Federal Claims No. 03-2489L (Order of August, 22, 2006), at \*2;

*Biery v. United States*, Court of Federal Claims Nos. 07-693L & 07-675L, 2012 WL 5914521, at

\*4 (Fed. Cl. Nov. 27, 2012); *Love Terminal Partners v. United States*, 126 Fed. Cl. 389 (2016);

and *Sears v. United States*, 124 Fed. Cl. 730 (2016).

## COUNT II

*An action for damages under the Uniform Relocation Act.*

29.     The Uniform Relocation Assistance and Real Property Acquisition Policies Act of

1970, 42 U.S.C. 4654(c) (URA) (Pub. L. 91-646; 84 Stat. 1894), requires the federal government

to reimburse this owner the "reasonable costs, disbursements and expenses, including reasonable

attorney, appraisal and engineering fees, actually incurred because of [the] proceeding."

30.     Greensboro College has incurred those costs and expenses which the URA requires

the federal government to pay and reimburse.

## RELIEF REQUESTED

For those reasons set forth above, this Court should enter an order granting Greensboro

College the following relief and order the federal government to:

A.     Pay Greensboro College the full fair-market value of that property the federal

government took.

B.     Pay Greensboro College compensation for the delay between when the government

took the owner's property in October 2019 and the actual date when the government finally honors

its constitutional obligation and pays this owner compensation for the land it took.

C.     Reimburse Greensboro College's litigation costs and attorneys' fees as provided in

URA §4654(c), which includes, "reasonable costs, disbursements and expenses, including

reasonable attorney, appraisal and engineering fees, actually incurred because of [the]

proceeding."

   D.     Award such further relief as this Court may deem just and proper.

Respectfully submitted this 20th day of April, 2020.


                              */s/ Lindsay S.C. Brinton*
                              Lindsay S.C. Brinton
                              Meghan S. Largent
                              Lewis Rice LLC
                              600 Washington Avenue, Suite 2500
                              St. Louis, Missouri 63101
                              (314) 444-7723
                              (314) 612-7723 (fax)
                              lbrinton@lewisrice.com

                              J. Nathan Duggins III
                              NC Bar No. 22029
                              Email: nduggins@tuggleduggins.com
                              Michael S. Fox
                              NC Bar No. 18778
                              Email: mfox@tuggleduggins.com
                              Jason B. Sparrow
                              NC Bar No. 25674
                              Email: jsparrow@tuggleduggins.com
                              Tuggle Duggins, P.A.
                              100 North Greene St., Suite 600
                              Greensboro, North Carolina 27402
                              Tel: 336-271-5244
                              Fax: 336-274-6590

                              *Attorneys for Plaintiff*